GREENE H. THOMPSON, plaintiff in error, vs. WILLIAM A. WILSON, defendant in error.

Knowledge of a matter, was acquired by an attorney at law, from the plaintiff, during the existence of the relationsh p of attorney and client, between him and the *defendant*.
*Held*, That he was competent to testify concerning the matter, as a witness for the defendant.

Assumpsit, in Greene Superior Court.     Tried before Judge
HARDEMAN, at September Term, 1859.

This was an action of assumpsit by William A. Wilson,
against Greene H. Thompson, on a promissory note, dated
24th May, 1855, for two hundred and five dollars and sixty-
two cents, payable one day after date, to said Thompson or
bearer.

The defendant pleaded the general issue, and failure of
consideration, in this, that the property purchased of plain-
tiff by defendant, and which constituted the principal part of
the consideration of said note, was *not* the property of plain-
tiff, but owned and held by him in partnership with another,
and that said plaintiff was the owner of but one-half of the
same, whereas, he represented that he was the sole and ex-
clusive owner thereof, and defendant purchased upon that
representation.

At the trial, plaintiff offered in evidence the note sued on,
and closed.

The defendant's attorney, *F. C. Fuller, Esq.*, offered himself
as a witness for defendant, to prove that the consideration in
part of the note sued on, was the balance of the purchase
money of certain horses, buggies and other things incident
to a livery stable, and a mail contract, the knowledge of which
facts was acquired by the witness from the plaintiff, who
voluntarily brought the note to him for collection after he
had been *retained by defendant*, and communicated the facts
proposed to be testified to.

Plaintiff objected to the witness, and the testimony pro-
posed, on the ground that he was an attorney in the cause,
and that the facts proposed to be testified to, came to his
knowledge during the existence of the relationship of client
and attorney. The Court sustained the objection and repel-
led the testimony, and counsel for defendant excepted.

Defendant then called the plaintiff as a witness, who, up-

on the direct examination, testified, that the note sued on was given for the balance due on an account exhibited. That the discrepancy between the amounts of the note and the balance of the account, was owing to another small note being added, due to him by defendant; that he signed said *contract;* that his brother owned one-half the property at the time of the sale to defendant.

*Cross-Examined.*—He testified, that at the time of the sale, his brother, D. W. Wilson, was his partner, and owned a half interest of the property sold to defendant; that he paid over all the money he received on the mail contract specified in the written contract, to said D. W. Wilson, partner of defendant, and took his receipt therefor; he signed said contract exhibited to him the year after he sold the property specified in it; he sold one-half the property only; the amounts charged for the property was a fair value for the entire interest; he considered the whole property worth a thousand dollars; considered the mail line worth a thousand dollars, but sold his interest, being a half interest in the whole property, for one thousand dollars; that he has run the mail line specified in said contract; that the whole income was $2,200 *per annum;* the expense of running about $1,200 or $1,300; that he sold the note prior to the suit, and took it up again; never told defendant that he would not make him pay it; never told the purchaser of the note why he took it up.   He considered the whole property at the time of the sale, worth $2,000.

Defendant objected to all such parts of the foregoing testimony, elicited on cross examination, as went to show that plaintiff sold only a half interest in said property, on the ground, that it altered or varied the terms of the written contract.

The Court overruled the objection and admitted the testimony, and counsel for defendant excepted.

Defendant then introduced in evidence the paper or ac-

count, denominated by the witnesses the "*written contract*," as follows:

G. H. THOMPSON,

Bought of WILLIAM A. WILSON,

1855.

| | | |
|---|---|---|
| May 24th. | 1 Hack, - - - - - - | $75 |
| | 2 sorrel horses,.(Gumbo and Shanghai,) | |
| | $75 each, - - - - | $150 |
| | 1 bay mare, (Puss,) - - - - | 65 |
| | 1 sorrel horse, (Fox,) - - - - | 80 |
| | 2 old Buggies, - - - - - | 75 |
| | 1 old Barouche, - - - - - | 50 |
| | 1 bay horse, (Bob,) - - - - | 75 |
| | His interest in crop of corn, 75 acres, more or less, | 150 |
| | | $700 |

One mail contract, running from Greensboro' to Scull Shoals, ending July 1st, 1855.

Also, the mail contract, commencing 1st July, 1855, and ending 1st July, 1859.

May 20. Received of Greene H. Thompson, in cash, $806, and one note given on 24th day of May, for $194, making in all $1,000.

      (Signed,)       WM. A. WILSON.

*John T. Dolvin*, sworn for the defendant, testified: That he knew the property, and thinks that the prices specified, were full prices for the entire interest; thought the mail contract from Greensboro' to Penfield, worth nothing; that to Scull Shoals, worth less.

*James M. Langford*, for defendant, swore that the property was specified in said *contract* at full prices. That the mail line *might* be worth a thousand dollars; he had run the line several years and made nothing; did not think the contract worth anything.

Plaintiff offered to read in reply, the depositions of Nicholas H. Wilson, his brother. To which counsel for defendant objected, on the ground that the contract for the sale of said property being in writing, the effect of the testimony proposed, was to change and alter the terms of said contract.

The Court overruled the objection, and admitted the depositions, to which decision counsel for defendant excepted.

The cause being submitted to the jury, they found for the plaintiff the full amount of the note.

Whereupon, counsel for defendant tendered their bill of exceptions, assigning as error the rulings and decision aforesaid excepted to.

T. R. R. COBB; and F. C. FULLER, for plaintiff in error.

PHILIP B. ROBINSON, *contra*.

*By the Court.*—BENNING J. delivering the opinion.

To render an attorney incompetent to testify concerning a matter, knowledge of it, must have come to him, "from his client, or during the existence, and by reason of the relationship of client and attorney." *Cobb*, 280.

Knowledge of the matter about which, it was desired to question Mr. Fuller, the attorney for Thompson, did not come to him, from Thompson, and although, it may be, that it came to him, during the existence of the relationship of client and attorney, between him and Thompson, yet it did not do so, by *reason* of that relationship. That he was Thompson's attorney, was rather a reason calculated to prevent such knowledge from coming to him; for, as Thompson's attorney, he was of course, one of the last men, to whom Wilson would, if he had known that fact, have communicated any information relating to the case.

Yet the Court below, held Fuller incompetent. We think, therefore, that it held wrong.

Was the Court right in admitting the evidence of the two Wilsons? We think so.

The objection made to this evidence, was, that it varied the written contract. But it is not true, that there was any written contract. What the plaintiff in error, seems to regard as a written contract, is nothing but *an account* in favor of Wilson, against Thompson. An account is not a contract, it is the act of but one of the parties to the sale or transaction, certainly it is not a contract in writing.

. The objection then, was not true in point of fact. Consequently it was not good.

New trial granted on the first exception.